## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Estate of Mark Parsons, *et al.*, | ) |
|  | ) |
| Plaintiffs, | ) |
| v. | )    Civil Action No. 07-01847(JR) |
|  | ) |
| The Palestinian Authority, *et al.*, | ) |
|  | ) |
| Defendants. | ) |

## REPLY TO PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") submit the following Memorandum in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss (Opposition).

### INTRODUCTION

Plaintiffs' Complaint sets forth a sweeping theory of the PA's and PLO's liability for a road-side bombing committed by unknown perpetrators in a volatile region of the Gaza Strip. The theory stands largely upon the suggestion that the PA and PLO failed to adequately execute their police and security functions or otherwise maintain public order in the Gaza Strip. Defendants demonstrated in their Motion to Dismiss that such a theory fails to state a claim under the Anti-Terrorism Act, 18 U.S.C. § 2333, because it is foreclosed under traditional tort law. Plaintiffs effectively conceded this point by failing to address it in their Opposition.

As a result, the Court is left with a Complaint that rests solely on the speculation that the PA and PLO actively participated in the commission of a bombing in which the identity of the culprits is so unclear that Plaintiffs are left to refer to them only as "the terrorists." While such a

Complaint is narrower than originally stated, however, it is still insufficient to withstand scrutiny under the dismissal standard set forth by the Supreme Court in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007). Plaintiffs have not articulated any specific facts in support of their speculative and formulaic allegations. Instead, Plaintiffs offer up a grab-bag of organizations, including Hamas, Palestinian Islamic Jihad, and Al-Aqsa Martyrs Brigades, "or some other involved terrorist organization," Complaint (DE 1) at ¶ 15, as being potentially implicated in the incident. Then, the Complaint charges that the PA and PLO "conspired with" and "aided and abetted" those who planted the bomb that killed Mark Parsons, but the Complaint does not set forth any facts in support of those allegations, identify any individual actors connected to the PA or PLO, or specify any acts conducted by those individuals that support Plaintiffs' various theories of liability. In essence, though the Plaintiffs cannot surmise which group or organization involved itself in the event, the Plaintiffs allege that the PA/PLO supported the organization. Such vague and conclusory allegations simply cannot suffice to adequately articulate the nature of the Plaintiffs' claims or the grounds upon which the claims rest.

Indeed, Plaintiffs concede that the facts alleged in their Complaint "may not establish every element of Plaintiffs' claims," but then argue that the dismissal motion should be denied because they have "set forth sufficient facts to at least raise a reasonable expectation that discovery will indeed reveal evidence of the Defendants' liability under the ATA ...." Opp. (DE 9) at 18. This approach suffers from legal and practical flaws. Whether a complaint states a cause of action is determined from the face of the complaint itself, and Plaintiffs now acknowledge that their Complaint currently "may not establish every element of Plaintiffs' claims." *See id.* Moreover, while it is certainly true that discovery can be used to secure proof to support an adequately-pleaded complaint, that is not what Plaintiffs purport to do here. Rather,

Plaintiffs acknowledge that they intend to utilize discovery in order to find critical "elements" that they are unable even to *allege* at this juncture. That type of fishing expedition is not permitted under the controlling law.

The Supreme Court in *Twombly* -- and the United States Court of Appeals for the District of Columbia Circuit in cases following *Twombly* -- have recognized the impropriety of obligating a defendant to incur the expense and diversion of conducting discovery on a deficient Complaint. In this case, the prejudice of Plaintiffs' proposed approach would be severe. Not only would discovery divert Defendants' attention away from pressing matters of diplomacy and governance, it would also do so with no prospect of success. Plaintiffs' admission that they cannot even plead "elements" of their case must be viewed in the light that they have already had identical allegations pending in the Eastern District of New York for over three years, and have already had the opportunity to conduct discovery on those allegations. The fact that Plaintiffs still cannot even allege a claim after having litigated the same facts for three years completely undercuts their speculation that discovery here will permit them to find critical "elements" of their case. This is particularly so in light of the fact that Hamas now controls the Gaza Strip. If Plaintiffs could not secure the requisite facts in their related case prior to the takeover, it is hard to see how they could do so now.

Aside from the basic failure of the Plaintiffs to state a claim upon which relief could be granted, there are additional reasons the Court should grant Defendants' Motion to Dismiss. First, Plaintiffs' attempt to eliminate, with respect to Anti-Terrorism Act ("ATA") defendants, the "fair play and substantial justice" prong of the personal jurisdiction inquiry is contradicted by caselaw in this Circuit and elsewhere. Second, Plaintiffs' pendent state-law claims are not cognizable in the District of Columbia, and the Court cannot exercise supplemental jurisdiction

over claims that cannot be asserted against Defendants under D.C. law.  Finally, Plaintiffs'

argument that equitable defenses, such as laches, may not be asserted in response to legal claims

is against the trend of modern caselaw and the facts and circumstances of this case support

application of the laches doctrine to bar plaintiffs' stale claims.

## ARGUMENT

**I.    PLAINTIFFS ABANDONED ANY CLAIMS SEEKING TO IMPOSE LIABILITY ON THE PA OR PLO FOR THEIR FAILURE TO MAINTAIN PUBLIC ORDER OR SECURITY IN THE GAZA STRIP.**

Plaintiffs' Complaint specifically alleges that the PA and PLO exercise "*de jure* and *de

facto* control of territories in the Gaza Strip and the West Bank," Complaint at ¶ 10, and contains

multiple references to the PA's and PLO's exercise of customary government powers within the

Gaza Strip.  *See* Complaint at ¶ 8 (referencing the PA's and PLO's *de jure* and *de facto* control

of territories in the Gaza Strip and in the West Bank and "the role which the PA plays on behalf

of the Palestinian people"), ¶ 12 (referencing the PA and PLO's establishment of an entity to

prevent hostilities and acts of terrorism), ¶ 19 (Defendants were "authorized . . . to exercise law

enforcement powers and to maintain public order and security in the territories under their

control and responsibility"), ¶ 20 (alleging the PA and PLO "operated, maintained, managed,

supervised and controlled various police forces, militias, paramilitary forces, intelligence

services, law enforcement personnel, jails and penal institutions in the territories under their

control and area of responsibility").  Moreover, the Complaint alleges that the Defendants failed

in their exercise of those duties and that this failure is evidenced by the events that caused Mr.

Parsons' death in the Gaza Strip.  *Id.* at ¶¶ 23-28.

As Defendants argued in their Motion to Dismiss, such an "omissions" theory, even if

supported by specific factual allegations, cannot state a valid "claim" under the ATA.  Mem. (DE

7) at 30-36. Plaintiffs do not respond to this argument or address it in any way. It is well established that "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded[.]" *Stephenson v. Cox*, 223 F.Supp. 2d 119, 121-22 (D.D.C. 2002) (citations omitted); *see also Burnett v. Sharma*, 511 F.Supp 2d 136, 145-46 (D.D.C. 2007) (holding that where "a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (citations and quotations omitted). By failing to address Defendants' arguments in this regard, Plaintiffs have effectively conceded any claims based on the PA's or PLO's provision of security (or failure to provide security) in the Gaza Strip or West Bank territories, and the Court should dismiss any claims predicated on such a theory of liability.

Defendants' Motion to Dismiss also argued that, to the extent an "omissions" claim were to be cognizable under the ATA, permitting a lawsuit to go forward premised on Defendants' purported failure to provide sufficient security in the Gaza Strip would implicate the political question doctrine, and thereby make Plaintiffs' "omissions" claim subject to dismissal under Fed. R. Civ. P. 12(b)(1). Mem. at 33-36. Plaintiffs do not respond to that argument either, other than to make the undisputed point that other courts have concluded that the political question doctrine is not implicated simply because a case arises out of the Palestinian-Israeli conflict. Opp. at 19-22. In their Motion to Dismiss, Defendants made the far narrower argument that claims involving the proper level of security provided by Defendants in exercise of their public safety powers are not justiciable under the political question doctrine. Mem. at 33-36. If the Court determines that the ATA covers such a claim despite Plaintiffs' abandonment of the point in their Opposition, the Court should hold that Plaintiffs' failure to address Defendants' limited political

question argument effectively concedes that the federal courts are ill-equipped to resolve the inherently political question of whether the Defendants provided a sufficient level of security in the Gaza Strip at the time of the attack.

## II.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF.

Aside from their abandoned "omissions" theory, all that is left of Plaintiffs' Complaint are their rote allegations that the PA and PLO are directly or vicariously liable for Mr. Parsons' death. Those allegations fail to state a claim for relief as they consist entirely of supposition and unsupported assertions without the requisite factual detail or support. Moreover, Plaintiffs admit the shortcomings of their Complaint, but seek to cure those shortcomings in discovery.

As this Court previously admonished, "given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant to ensure that he -- or it -- does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the" complaint. *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003). Plaintiffs' allegations, while numerous and strident, are not plausible on their face and do not rise above mere speculation. *See* Mem. 20-29. Because the perpetrators of the bombing attack are unknown, Plaintiffs are left to speculate about which organizations or militia groups, if any, sponsored the attack. *See* Complaint at ¶ 15 (alleging that the attack was "committed, upon information and belief, by the Popular Resistance Committees or some other involved terrorist organization(s) (collectively 'The Terrorists'))." Allegations that the PA/PLO supported unspecified "involved terrorist organization[s]" with which unknown perpetrator(s) may or may not have been affiliated are insufficient to state a claim that the PA and PLO are

directly or vicariously liable for, or aided and abetted, the attack that killed Mr. Parsons. *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007).

In their Opposition, Plaintiffs even acknowledge that "these facts [alleged in the complaint] may not establish every element of the Plaintiffs' claims," but then assert that *Twombly* nonetheless permits the case to proceed. Opp. at 18. According to Plaintiffs, the Court should allow the case to go forward because Plaintiffs have set forth "sufficient facts to at least raise a reasonable expectation that discovery will indeed reveal evidence of the Defendants' liability under the ATA . . . ." *Id.* But *Twombly* and the Federal Rules of Civil Procedure do not permit a plaintiff to file a complaint that lacks core "elements" in the hopes that such deficiencies can be cured after a wide-ranging search for a case in discovery. In other words, Plaintiffs' claim that they have a "reasonable expectation that discovery will reveal evidence of the necessary elements" of the claim, Opp. at 17, cannot substitute for the requisite detail required by Rules 8 and 12(b)(6).   This is particularly so when Plaintiffs already have had the opportunity to conduct discovery on the same claim in the *Litle* case, which has been pending for over three years. *See Litle v. Arab Bank, PLC*, No.1:04-cv-05449-NG-VVP (E.D.N.Y.). The docket in *Litle*, in fact, references numerous discovery matters since plaintiffs filed their complaint on December 15, 2004. If years of discovery in *Litle* have not yet provided Plaintiffs with sufficient facts even to allege "every element" of their case, it is hard to see how additional discovery will do so now. As Defendants pointed out in the Motion to Dismiss, the Gaza Strip, where Mr. Parsons was killed and, presumably, where the majority of evidence relating to Plaintiffs' claims exists, is firmly out of the control of the Defendants since the 2007 Hamas violent takeover of the region. Any party in this matter, or their agents, would be at risk if they entered the Gaza Strip territory in an attempt to collect discovery in this matter. In such circumstances, it is

difficult to imagine that an unfocused fishing expedition such as that which will necessarily follow upon Plaintiffs' vague and non-specific Complaint will yield any evidence necessary to support a claim.[1]

### A.    The Complaint Fails to State a Claim Pursuant to *Twombly*.

The core of Plaintiffs' Complaint regarding the PA's and PLO's direct liability is the allegation that the Palestinian Preventive Security Force ("PPSF") operated "bomb making factories" in the Gaza Strip, funded by the PA and PLO, and that the PPSF "provided the bomb to the [unnamed and unidentified] terrorists who carried out the attack on Mark Parsons." Opp. at 18. Plaintiffs provide no factual support for that allegation, which Plaintiffs suggest is based solely upon "information and belief." Complaint at ¶ 16. The source of that "information and belief" is not unidentified in the Complaint, nor do Plaintiffs suggest in their Opposition that any specific source of that information exists. While it is not improper to plead facts "on information and belief" when facts are particularly within the opposing party's knowledge, *see generally IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993), such a pleading crutch does not obviate Plaintiffs' obligation to plead enough facts to state a claim that is plausible on its face. *Twombly*, 127 S. Ct. at 1973-74. Review of the Complaint demonstrates that Plaintiffs have not pleaded such facts because their theory is speculative and without objective factual support.

As noted in the Motion, Plaintiffs do not identify the terrorist organization responsible for the attack or identify any individuals allegedly involved in its planning or execution. The

---

[1] As explained in Defendants' Motion to Dismiss and more fully below, it was Plaintiffs' own delay in asserting these claims that effectively cut-off the parties' ability to conduct discovery in Gaza. Plaintiffs were clearly on notice of their potential claims as early as 2004, as evidenced by their filing suit against other defendants under the same statute for the same incident. *See Litle v. Arab Bank*, No. 1:04-cv-05449-NG-VVP (E.D.N.Y.).

Complaint does not identify any individual affiliated with the PA and PLO involved with the

attack or identify when, why, or how the PA or PLO decided it would advance their interests to

bomb an American convoy engaged in non-military activity.  In lieu of identifying any factual

specifics, the Complaint strings together multiple conclusory allegations based on "information

and belief."  "Though conclusory assertions may afford a defendant 'fair notice' of the nature of

a plaintiff's claim, only factual allegations can clarify the 'grounds' on which that claim rests."

*Republic Prop. Trust v. Republic Props. Corp.*, No. 07-595, 2008 U.S. Dist. LEXIS 25843, *10-

11 (D.D.C. Mar. 31, 2008) (citing *Twombly* 127 S. Ct. at 1965 n.3).[2]

       To the extent Plaintiffs allege the PA or PLO are vicariously liable for the attack -- as

either members of a conspiracy or as aiders and abettors, such allegations also fail to state a

claim.  The Complaint's conspiracy allegations consist of a formulaic recitation of the elements

of a civil conspiracy, with no facts or allegations to support such claims.  There are no facts

identifying alleged co-conspirators, no allegations identifying meetings among potential co-

conspirators, no statements defining the alleged object of the conspiracy, and, most importantly,

no allegations identifying the member of the alleged conspiracy that carried out the attack on Mr.

Parsons.  *Twombly* 127 S. Ct. at 1966 ("terms like 'conspiracy,' or even 'agreement,' are border-

line:  they might well be sufficient in conjunction with a more specific allegation . . . but a court

---

[2] Plaintiffs contend that similar "facts" were alleged in *Gilmore v. Palestinian Authority*, 422 F. Supp. 2d
96 (D.D.C. 2006), and that such allegations were found to be sufficient to withstand a motion to dismiss.
Opp. at 16.  Three points bear notice in regard to that argument.  First, the *Gilmore* decision predates the
Supreme Court's decision in *Twombly*.  Second, a Motion to Vacate Clerk's Entry of Default is currently
pending in *Gilmore*.  Case No. 1:01-cv-00853-GK-DAR, DE 107.  One of Defendants' arguments in
support of that Motion cites the deficiency of the Complaint under *Twombly,* as part of the demonstration
of the meritorious defense prong of the Fed. R. Civ. P. 55 standard for vacatur.  *Gilmore*, DE 107 at 37-
39.  Third, while defendants have argued the *Twombly* issue at some length in *Gilmore*, the fact is that the
instant Complaint is even more vague and conclusory than is that in *Gilmore*.

is not required to accept such terms as a sufficient basis for a complaint") (citations omitted); Mem. at 24-25.

Similarly, to the extent Plaintiffs seek to impose aiding and abetting liability, the Complaint lacks the necessary detail to set forth such claims. Mem. at 26-29. While the Plaintiffs' Opposition insists that their Complaint "demonstrate[s] the PA/PLO's aiding and abetting and material support of the terrorist activities that contributed directly to the death of Mark Parsons," it does no such thing. Opp. at 18. Rather, the Complaint merely alleges, without support, that the PA or PLO "knowingly" or "purposefully" took acts that contributed to the attack. As Defendants point out in the Motion to Dismiss, such allegations are little more than legal conclusions couched as established facts. Mem. at 28 (citing *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). Plaintiffs' Opposition does not dispute this critical point.

Quite simply, Plaintiffs' Complaint lacks a "plain statement' possess[ing] enough heft to 'show the pleader is entitled to relief'" and should therefore be dismissed. *See Twombly*, 127 S. Ct. at 1966.

**B.  Plaintiffs' Cannot Rely on Discovery to Cure Their Pleading Defects.**

*Twombly* requires that a Complaint allege "something beyond . . . mere possibility" and that the allegations of the Complaint must rise beyond "the speculative level." 127 S. Ct. at 1965-66. Plaintiffs do not contest this basic proposition, but suggest they will overcome those "elements" that are lacking in their Complaint because "discovery will indeed reveal evidence of the Defendants' liability under the ATA[.]" Opp. at 18. Even if a deficient Complaint could be rescued by later discovery, a proposition at odds with the fundamental holding of *Twombly*, Plaintiffs' position ignores a key facet of the Complaint in this case: Plaintiffs already have been

conducting litigation, including discovery, in connection with this attack for three years in the *Litle* case, and still have no factual basis for their claims here. Given that discovery in *Litle* apparently has not yet revealed any basis for stating a claim against the PA and PLO in connection with this incident, this Court should not allow the prospect of additional discovery to sustain the instant Complaint. This is even more so given the current impediments to discovery related to this Gaza Strip incident. As was widely publicized, in June 2007, Hamas staged a violent takeover of the Gaza Strip. The PA and PLO currently exercise no control over the Gaza Strip and have no presence there. As a practical result, the parties' ability to conduct discovery in the Gaza Strip is non-existent and any suggestion that discovery will "indeed reveal evidence" of anything connected to Plaintiffs' Complaint is conjectural at best and unrealistic at worst.

During discovery, a party may not be "ordered to turn over something that they do not have in their possession, custody, or control." *Tequila Centinela, S.A. v. Bacardi & Co.*, 242 F.R.D. 1, 12 (D.D.C. 2007). Moreover, the burden of proving custody or control of discovery materials is on the party seeking the discovery. *See SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000). Plaintiffs will be unable to venture into Gaza, and given the expulsion of the PA from the territory, Defendants do not currently control Gaza and cannot be made responsible for producing and gathering discovery within Gaza. *Cf. United States v. American Tel. & Tel. Co.*, 461 F. Supp. 1314, 1336 (D.D.C. 1978) (finding that the Department of Justice was not in control of the Federal Communications Commission and could not be ordered to produce materials within the possession of the FCC). Since the Hamas takeover of Gaza, the territory has become a "no-man's land" and is unsafe as a practical matter. Because Plaintiffs have admittedly been unable to secure even a rudimentary understanding of what happened despite three years of litigation involving the same facts, it is a virtual certainty that

this litigation will not lead to the discovery of new documents, witnesses, or other relevant information located in Gaza. If Plaintiffs are unable even to state elements of their case now -- as is admittedly true (Opp. at 18) -- it is a virtual impossibility they will be able to do so even if permitted to go on an improper fishing expedition. The facts now in the possession of the Plaintiffs likely represent the quantum of facts Plaintiffs can develop to support their claims regarding the attack alleged in the Complaint. For the reasons set forth above, that quantum of facts cannot support Plaintiffs' Complaint against the PA and PLO and there is no reason to believe that discovery will alter that conclusion.

## III.    THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

In their Opposition, Plaintiffs present a new framework for analyzing personal jurisdiction under nationwide service of process rules in ATA cases. Plaintiffs essentially reject, or at least circumscribe, the clear constitutional test articulated by *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987). There is, however, no legal support for the proposition that this Court should ignore the *Asahi* test, and application of that test compels the conclusion that this Court lacks personal jurisdiction over the PA and PLO.

There is no question that a defendant must have "minimum contacts" with the forum for a court to properly exercise personal jurisdiction. Plaintiffs rely nearly entirely on third party accounts of statements or speeches made by the former and current head of the PLO Mission to the United States -- Hasan Abdel Rahman and Afif Safieh, respectively -- to establish those "minimum contacts" in this case. Opp. Exs. A-C. However, for the reasons set forth in the Motion to Dismiss, the limited contacts of the PLO in the United States do not rise to a sufficient level to permit the Court's exercise of personal jurisdiction over the PLO. Mem. at 10-12. Moreover, the PA does not maintain any offices or agents within the United States. Properly

evaluating the independent contacts of the PA and PLO in the United States, the Defendants

maintain that there are not constitutionally sufficient minimum contacts for an exercise of

personal jurisdiction.

Plaintiffs also rely on Judge Friedman's rulings in *Kleiman v. Palestinian Authority*, -- F.

Supp. 2d --, 2008 WL 177697 (D.D.C., Apr. 18, 2008), through a supplemental filing informing

this Court of those decisions. DE 11. However, most of the questions before Judge Friedman in

*Kleiman* were unique service of process issues that have nothing to do with the questions raised

in the instant motion, *see id.* at 2-8, and the "minimum contacts" question before Judge Friedman

arose in a far different procedural posture. Because prior counsel in *Kleiman* raised different

personal jurisdiction arguments, *see* DE 11 at 3 (discussing motions to dismiss filed by prior

counsel in *Kleiman* case), the "minimum contacts" argument raised by current counsel in

*Kleiman* was presented in the posture of a motion for reconsideration. *See* DE 11 at 9-11. Judge

Friedman's recent decision and order on the personal jurisdiction issue thus applied the stricter

standards that apply on motions for reconsideration, DE 11 at 9-10, not those that apply to a

matter on plenary review.

*Kleiman* itself, moreover, involved different jurisdictional allegations and a complaint

filed in 2004. Because "minimum contacts" must be assessed on a case by case basis at the time

of the filing of the complaint, *see* Mem. at 11-12 (citing law showing that personal jurisdiction

must be determined on a case by case by basis and at the time of the filing of the complaint),

Judge Friedman's rulings on reconsideration of the "minimum contacts" issue are, at most, of

very limited value here. In contrast to *Kleiman*, this case involves "minimum contacts"

arguments raised in a timely manner, challenging jurisdictional allegations contained in a 2007

Complaint. This Court must address these timely arguments in a plenary fashion, with an eye

toward the contacts as they existed at the time of the filing of the Complaint, and with at most limited regard for the very different situation in *Kleiman*.

In any event, even if sufficient contacts exist, such contacts do not end the analysis. This Court must also go on to address whether it is "reasonable under the circumstances of the particular case" to exercise personal jurisdiction. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Such an inquiry is guided by the Supreme Court's five-factor test set forth in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987). Mem. at 12-13. Despite this clear constitutional guidance from the Supreme Court, Plaintiffs now attempt to dispose of the "reasonable under the circumstances" inquiry, and create an entirely new personal jurisdiction test, which requires only (1) service and (2) sufficient minimum contacts by the Defendants. Opp. at 9.

The most glaring problem with Plaintiffs' effort to avoid the *Asahi* reasonablness inquiry is its improper reliance on selective citations of the *Mwani* and *Burnett* decisions. *See Mwani v. Bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005), and *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d at 95-96. For example, in citing to the *Mwani* decision, the Plaintiffs argue that "once the Court is satisfied that a defendant has sufficient minimum contacts with the United States, then the due process analysis is satisfied, and no further inquiry is required." Opp. at 8-9 (*citing Mwani* 417 F.3d at 11). However, such selective citation neglects the critical portion of the D.C. Circuit's decision on the question of what happens after the court determines that minimum contacts exist:

> [E]ven after it has been decided that a defendant purposefully established minimum contacts within the forum . . ., these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. But where a defendant who purposefully has directed his activities at forum residents seeks to defeat

14

jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Mwani*, 417 F.3d at 14 (internal citation and quotation omitted).

Plaintiffs treat *Burnett* in similar fashion.  In their brief, Plaintiffs quote a single sentence of the decision: "Because the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes, assuming the defendant has been properly served, 'is whether the Defendant has had minimum contacts with the United States.'"  Opp. at 9 (*quoting Burnett*, 274 F. Supp. 2d at 95-96).  Plaintiffs omit, however, footnote 5 of the decision, which flatly contradicts their position and cites to numerous decisions that have squarely held that due process considerations still apply in the context of nationwide service of process and prevent an exercise of personal jurisdiction where a defendant "will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Burnett*, 274 F. Supp. 2d at 96 n.5.  This Court in *Burnett* did not factor such considerations into its personal jurisdiction analysis because "none of the defendants ... attempted to . . . make a showing of constitutionally significant inconvenience of litigating in the chosen forum." *Id.*  In short, *Burnett* strongly suggests that an assessment of fair play and substantial justice interests *is* required in cases brought under a nationwide service of process statute if the circumstances of the defendant make such an inquiry relevant.

The PA and PLO have, in fact, demonstrated the relevance of such an inquiry in this case and have articulated the constitutionally significant inconvenience of litigating the case in the United States. *See* Mem. at 12-14.  When read fully rather than selectively, moreover, *Mwani* and *Burnett* suggest this Court should consider this question on the merits.  The weight of authority from around the country also holds that such an analysis is required.  The divided panel decision from the Fifth Circuit cited by Plaintiffs for the proposition that the due process

considerations of fairness can be overridden by Congress' decision to provide for nationwide service of process, *see* Opp. at 9 (*citing Busch v. Buchman, Buchman & O'Brien Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994)), does not outweigh the better-reasoned authority from around the country that has rejected the Fifth Circuit's approach in that case. *See, e.g.*, *Peay v. Bellsouth Medical Assistance Plan*, 205 F.3d 1206, 1211-12 (10th Cir. 2000); *Republic of Panama v. BCCI Holdings*, 119 F.3d 935 (11th Cir. 1997); *Chew v. Dietrich*, 143 F.3d 24, 28 & n.4 (2d Cir. 1998); *Horne v. Adolph Coors Co.*, 684 F.2d 255, 259 (3d Cir. 1982). Indeed, the rule Plaintiffs' seek is not even well-established in the Fifth Circuit, where a different panel has expressed open disagreement. *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 826 (5th Cir. 1996) ("Although we dutifully apply *Busch,* we emphasize our disagreement with it to the extent it concludes that the proper personal jurisdiction test in a national service of process case is whether minimum contacts exist between the individual and the national sovereign. We view personal jurisdiction and service of process as conceptually distinct issues. We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions.") (footnote and citation omitted).

Other courts have similarly noted their disagreement with the approach Plaintiffs seek, and have instead sided with the D.C. Circuit's analysis in *Mwani* and this Court's approach in *Burnett*. As the Tenth Circuit has noted, "[t]o allow Congress to dictate personal jurisdiction through the enactment of nationwide service of process provisions, unquestioned by the judiciary, is nonsensical." *Peay*, 205 F.3d at 1211 (*quoting in part, Willingway Hosp. v. Blue Cross & Blue Shield*, 870 F. Supp. 1102, 1106 (S.D. Ga. 1994)). In other words, "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant."

*Peay*, 205 F.3d at 1212; *Republic of Panama v. BCCI Holdings*, 119 F.3d 935 (11th Cir. 1997);

*Chew v. Dietrich,* 143 F.3d 24, 28 & n.4 (2d Cir. 1998) (not addressing dispute directly but

applying fundamental fairness approach in nationwide service of process case and expressly

holding that approach is the same under the Fifth Amendment as under the Fourteenth). This

Court should adopt a similar approach and address Defendants' due process arguments on the

merits. If it does so, the undue burdens the PA and PLO will incur if forced to litigate this

dispute in the United States should lead the Court to resolve issues of fair play and substantial

justice in the Defendants' favor.

Plaintiffs attempt to dismiss Defendants' reliance on the *Asahi* factors as simply a forum

non conveniens argument. Opp. at 10. This oversimplification reduces a necessary

constitutional inquiry to little more than a procedural consideration. As the court explained in

*Happy Merchant, Ltd. v. Far Eastern Shipping Co.*, No. C-94-3927, 1995 U.S. Dist. LEXIS

17446, *14 (N.D. Cal. Nov. 8, 1995), a "*forum non conveniens* analysis . . . must be

distinguished from a personal jurisdiction analysis, in which the availability of an alternative

forum is but one part of an evaluation of whether the exercise of jurisdiction over a defendant

would violate due process."

When one applies the *Asahi* factors to this case, it is clear that the Court's exercise of

jurisdiction over the PA and PLO, especially given their virtually non-existent contact with the

United States, is unreasonable. As Defendants' set forth in their motion to dismiss, and as

Plaintiffs make no meaningful attempt to refute, the balance of factors that must be considered in

the reasonableness analysis tilt decidedly in favor of Defendants. Mem. at 12-14.

IV.    **PLAINTIFFS' STATE LAW CLAIMS AGAINST DEFENDANTS ARE NOT COGNIZABLE IN THE DISTRICT OF COLUMBIA AND SHOULD BE DISMISSED.**

In their Opposition, Plaintiffs engage in extensive discussion regarding the Court's authority to exercise supplemental jurisdiction under 28 U.S.C. § 1367. Defendants do not quarrel with Plaintiffs' underlying statement of law. Plaintiffs, however, fail to acknowledge that, as unincorporated associations, Defendants' capacity to be sued for non-federal claims is determined by the state law "where the court is located[.]" Fed. R. Civ. P. 17(b). District of Columbia law is unequivocal that unincorporated associations may not be sued in their own names: "The common law of this jurisdiction is that neither a partnership nor an unincorporated association may be sued in its own name." *Pritchett v. Stillwell*, 604 A.2d 886, 889 (D.C. 1992). Relying on this principle, Judge Bates dismissed state law claims brought against an unincorporated association in *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 91 (D.D.C. 2006). Plaintiffs point to no authority to the contrary and, indeed, there is none. Because the PA and PLO lack the capacity to be sued under D.C. law, there is no supplemental jurisdiction for this Court to exercise. As a result, Count 5 of the Complaint should be dismissed.

V.    **PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF LACHES.**

Plaintiffs respond to the Defendants' laches argument by noting, as Defendants already acknowledged in their Motion, that it remains an open question in this Circuit whether laches applies to legal claims. Mem. at 42 ("The D.C. Circuit has not squarely addressed the question."), Opp. at 27 ("Defendant [sic] can not cite a single D.C. Circuit decision that would apply the doctrine of laches to a pure claim-at-law"). But, as Defendants also demonstrated in their moving papers, a number of other Circuits have squarely held that the merger of law and equity means that the equitable doctrine of laches may be applied to claims at law in appropriate

circumstances, Mem. at 42, and the D.C. Circuit has applied similar reasoning in holding that the merger of law and equity also means that a statute of limitations may be applied to equitable claims. *Id.* at 43 (*citing Walters v. Secretary of Defense*, 725 F.2d 107, 111-14 (D.C. Cir. 1983)). Defendants' argument was designed to address the real question before the Court, which is not whether the D.C. Circuit has squarely spoken to the issue -- it has not -- but rather what the better-reasoned authorities from around the country say and whether the D.C. Circuit would follow those authorities. On this question, Plaintiffs' Opposition is entirely silent.

Thus, Plaintiffs cite to a Fourth Circuit opinion relying on the ancient demarcation between law and equity (Opp. at 28) but ignore the Seventh Circuit's explicit holding (relied on by Defendants) that "just as various tolling doctrines can be used to lengthen the period for suit specified in a statute of limitations, so laches can be used to contract it." *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002). Nor do Plaintiffs acknowledge the Sixth Circuit's adoption of the same rule, in a case where the appellate court explained that the equitable doctrine of laches may be applied in cases where there is an otherwise explicit statute of limitations in "what can best be described as unusual circumstances" and that the court has "not ruled out invocation of the equitable doctrine when an applicable statute [of limitations] otherwise references an explicit limitations period." *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 233, 234 (6th Cir. 2007); *see also In re: Brin-Mont Chemicals, Inc.*, 154 B.R. 903 (M.D.N.C. 1993) ("This Court believes that considerations of basic fairness support the rule that the doctrine of laches can, under exceptional circumstances, cut short an express statute of limitations").

Plaintiffs not only ignore the split of authority entirely but also make no attempt to explain why this Circuit would adopt the Fourth Circuit's position that, despite the merger of law

and equity, a bright-line demarcation continues to exist between the equitable defense of laches and legal claims for damages. In their Motion to Dismiss, Defendants argued that the D.C. Circuit decision in *Walters* v. *Secretary of Defense*, 725 F.2d at 111, strongly suggested that our Circuit agrees with the reasoning of those courts, like the Sixth and Seventh Circuits, that refused to continue to apply such formalistic rules. Mem. at 42-43. Plaintiffs have no meaningful counter to this argument. Indeed, in their opposition, Plaintiffs acknowledge *Walters'* recognition that "creation of a single civil action abolished the rule in which statute of limitations were generally deemed purely legal defenses, inapplicable to equitable claims." Opp. at 27. Though Plaintiffs' then struggle to defeat the import of this statement by pointing to differences in language in the limitations provision in *Walters*, they ultimately fail because the upshot of *Walters* remains clear. If the merger of law and equity "abolished the rule in which statute of limitations were generally deemed purely legal defenses," as *Walters* holds, then surely the merger of law and equity also abolished the former regime in which equitable defenses like laches were inapplicable to legal claims. Many courts have already so held and *Walters* strongly suggests that, in the appropriate case, the D.C. Circuit will as well.

To be sure, the circumstances in which laches should cut short a lawsuit that is filed within the limitations period are undoubtedly few and far between. But as Defendants argued, and as Plaintiffs do virtually nothing to refute, the circumstances of this case make it one of the "unusual circumstances" where the doctrine of laches may be invoked to contract a specified statute of limitations. Traditionally, laches may be invoked where there has been a "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Pro-Football, Inc.* v. *Harjo*, 415 F.3d 44, 47-48 (D.C. Cir. 2005) (quoting *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 121-22 (2002)). Though

Plaintiffs' claim that the "doctrine of laches does not consider a period less than four years to be a significant delay," Opp. at 29, the doctrine, by its very nature, is not dependent on time elapsed. Rather, the inquiry is whether the plaintiff has not acted with diligence to protect his rights and whether the defendant asserting laches has been prejudiced by such a delay.

Here, Plaintiffs were well aware of their rights under the ATA by no later than 2004, as evidenced by their lawsuit arising out of the same facts against an entirely different set of defendants in *Litle v. Arab Bank*, No. 1:04-cv-05449-NG-VVP (E.D.N.Y.). Plaintiffs offer no reason why they waited an additional three years before filing suit against the PA and PLO. The complaints in this matter and *Litle* are substantially similar, and there is no indication that the Plaintiffs spent the intervening three years collecting evidence or developing facts.

Moreover, the delay in bringing suit causes severe prejudice to the Defendants given the events in Gaza in 2007. Plaintiffs' quibble about the lack of proof on the status of Gaza, but that status is beyond reasonable dispute and the proper subject of judicial notice in connection with the motion to dismiss. As a matter of law, there can be no reasonable dispute either about the Hamas uprising in Gaza generally or that the Hamas uprising in Gaza will seriously impede the defense of this case. Indeed, to the extent any relevant information is trapped within Gaza, it will be impossible for the Defendants (or their agents) to collect such information, thus substantially prejudicing the Defendants' ability to defend themselves against these allegations.

Given the Plaintiffs' long-standing knowledge of the ATA and their rights under the law, coupled with their decision not to bring suit against the PLO and PA until *after* Gaza was well out of Defendants' control, Defendants submit that this case presents the rare exceptional circumstance where laches may be applied before the statute of limitations has run, and the Court should find Plaintiffs' claims barred by the doctrine of laches.

## CONCLUSION

Plaintiffs acknowledge their Complaint does not state every "element" of their claims. Opp. at 18. While Plaintiffs express the hope that discovery will eventually produce evidence of Defendants' "liability," *id.*, this method of proceeding was never proper, and is particularly problematic in the post-*Twombly* period. Litigants cannot rely on conclusory allegations of wrongdoing in the hope that some claim will eventually "turn up" in discovery. Nor can Plaintiffs secure additional leeway simply because their vague and conclusory allegations are terrorism-related. Indeed, as this Court explained in *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d at 103-04, if anything, the opposite is true. Terrorism charges require "extra-careful scrutiny" because of their extreme and inflammatory nature, the likelihood that discovery will be burdensome, and the likelihood that Defendants will be unfairly tainted simply by having to defend the charges on the merits. When this Court applies that "extra-careful scrutiny" here, it will become clear that Plaintiffs have failed to plead a cause of action, and the Court should dismiss the Complaint in its entirety against the PA and PLO.

Respectfully submitted,

Dated: May 12, 2008

/s/ Richard A. Hibey
Richard A. Hibey (D.C. Bar #74823)
Mark J. Rochon (D.C. Bar #376042)
Charles F.B. McAleer, Jr. (D.C. Bar #388681)
Laura G. Ferguson (D.C. Bar # 433648)
Timothy P. O'Toole (D.C. Bar # 469800)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858

*Attorneys for Defendants the Palestinian Authority
and Palestine Liberation Organization*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 12th day of May, 2008, a true and genuine copy of the

foregoing was filed by ECF, which automatically provided service to the following:

>
> Richard D. Heideman
> Noel Jason Nudelman
> Tracy Reichman Kalik
> HEIDEMAN NUDELMAN & KALIK, P.C.
> 1146 19th Street, NW
> 5th Floor
> Washington, DC 20036
> (202) 463-1818
> Email: rdheideman@heidemanlaw.com
>      njnudelman@heidemanlaw.com
>      trkalik@hnklaw.com
>
> *Attorneys for Plaintiffs*

                 /s/ Charles F. B. McAleer, Jr.