**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ESTATE OF MARK PARSONS, *et al*.,  :
                                  :
       Plaintiffs,         :
                                  :
   v.                               : Civil Action No. 07-1847 (JR)
                                  :
THE PALESTINIAN AUTHORITY, *et*   :
*al*.,                               :
                                  :
      Defendants.        :

**MEMORANDUM**

On October 15, 2003, Mark Parsons was traveling near the Ben Hanoun junction in northern Gaza, Palestine, as part of a security detail escorting United States diplomats to interview applicants for Fulbright scholarships. A remote control bomb denoted near Parsons' vehicle, killing him and two others. Parsons' estate, his siblings, and the estate of his parents (collectively, "plaintiffs") bring this action against the Palestinian Authority ("PA") and the Palestinian Liberation Organization ("PLO") under the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C. § 2331 et seq., alleging that they bear responsibility for the bombing.

At the motion to dismiss phase, I permitted the plaintiffs to proceed to discovery even though they could not identify the entity responsible for the attack. See Dkt. #14 at 11-12. Plaintiffs now contend that Amer Qarmout and/or the Popular Resistance Committee ("PRC"), a militant organization in

Palestine, committed the attack, and they contend that the PA and PLO have a sufficiently close relationship to Qarmout, the PRC, and the bombing to justify holding them liable. Defendants now move for summary judgment. For the reasons that follow, the motion must be granted.

## **Analysis**

### **I. Palestinian Liberation Organization**

While plaintiffs' claims against the PA require extended analysis, their claims against the PLO can be dismissed quickly. All of the plaintiffs' evidence, discussed below, relates to the PA. While the Complaint may aver that PLO in actuality controlled the PA during all relevant times, see Compl. ¶ 9, at the summary judgment stage evidence is required. None has been provided. Summary judgment will granted on all claims against the PLO.

### **II. Palestinian Authority**

I previously granted the defendants' motion to dismiss the plaintiffs' common law claim (Count Five) and denied the motion to dismiss the plaintiffs' ATA claims (Counts One through Four).[1] See Dkt. #14. Under the ATA, "[a]ny national of the United States injured in his or her person, property, or business

---

[1] Count Six, which seeks punitive damages, was asserted in connection with the non-ATA claim and must be dismissed. See Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (punitive damages not available under the ATA, which already offers treble damages).

by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States." 18 U.S.C. § 2333. "International terrorism" is defined by the ATA as activities that, among other requirements, "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." 18 U.S.C. § 2331(1)(A).

A necessary predicate to any finding that the PA engaged in "international terrorism," is a finding that the PA violated one of three federal criminal statutes. Plaintiffs allege, first, that the PA violated 18 U.S.C. § 2339A, by providing material support to aid in the killing of a U.S. national outside of the United States. They allege second, that the PA conspired to kill a U.S. national outside of the United States, in violation of 18 U.S.C. § 2332(b). And they allege, third, that the PA violated 18 U.S.C. § 2339B, which criminalizes knowingly providing material support to a "foreign terrorist organization." I will discuss each predicate criminal act in turn.

**A. Material support for killing (§ 2339A)**

**1. Legal standard**

Section 2339A prohibits "supply[ing] material support or resources," "knowing or intending that they are to be used in preparation for, or in carrying out a violation of" other specified provisions of the U.S. criminal code, including 18 U.S.C. § 2332, which prohibits the killing of a U.S. national outside the United States. To determine whether a defendant has provided material support for a terrorist act under § 2339A, a court must determine (1) what terrorist organization or individual carried out the attack, and (2) whether the defendant provided material support to that entity or individual. See Gates v. Syrian Arab Republic, 580 F. Supp. 2d 53, 67 (D.D.C. 2008); Ben-Rafael v. Islamic Republic of Iran, 540 F. Supp. 2d 39, 46 (D.D.C. 2008); see also Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571, 585 (E.D.N.Y. 2005) (plaintiffs must prove that the defendant provided material support "to the particular group responsible for the attacks giving rise to their injuries").

Central to the material support predicate, then, is the requirement that the plaintiffs prove who committed the attacks. This is where plaintiffs' case falters.

**2. Alleged bombers**

The plaintiffs first assert that Amer Qarmout and his agents planted the bomb. The PA conducted an investigation of

this bombing, and plaintiffs rely primarily on PA investigation files to oppose the summary judgment motion. During the investigation, the PA detained six individuals for questioning, including Qarmout, who was a member of the PRC. Def. St. Mat. Facts Not in Dispute ¶ 11; Resp. Ex. B at 7. Under interrogation, Qarmout admitted to having obtained four bombs. Def. St. Mat. Facts ¶ 13. He also stated that, three days before Parsons was killed, he supervised the digging of a hole for a bomb by the street in which the bomb that killed Parsons detonated, and he stated that he asked PA security officers to help with the digging. Id. ¶ 15. All six of the arrested individuals denied responsibility for the attack, however, and Qarmout himself stated that he called off the actual planting of the bomb. Id. ¶¶ 15-16.

Evidence that someone prepared to do something is of course relevant to the question whether the person actually did it. But in light of his denial of actually orchestrating the bombing, Qarmout's admissions are not sufficient to carry the plaintiff's burden, and the plaintiffs have no other admissible evidence to link Qarmout to the bombing.[2]

Even if they cannot prove Qarmout's responsibility in particular, the plaintiffs argue that they can show that the PRC,

---

[2] There is also at least some indication that the bomb had been present for 20 days prior to the explosion, see Resp. Ex. A at 3, contrary to Qarmout's account.

in general, is responsible for the bombing.  The plaintiffs first point to what purports to be a PA report ("the Report") addressed to the Director General of the Preventive Security Force (the PA police, essentially).  In the section entitled "Conclusion and personal interpretation of what happened according to information in my possession," the Report states that the explosive device used in the bombing has a structure similar to that of bombs used by the PRC.  Resp. Ex. A. at 3.  Although the PA argues that the entire conclusion section should be disregarded because of its heading, this information is essentially of a factual nature and does have some relevance, as it tends to show a pattern or practice by the PRC.  On the other hand, because the Report is undated and anonymous, its weight is minimal.

The plaintiffs next refer to an internal U.S. State Department memorandum, which that memo indicates that the State Department received a report from the Agence Frace-Presse ("AFP"), an international news wire agency, to the effect that the PRC claimed responsibility for the bombing in an anonymous phone call to the AFP.  See Resp. Ex. D at 34-35.  Given the multiple levels of hearsay involved, this report is not admissible evidence.  See, e.g., Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995).  Even if it were admissible, the report notes that AFP itself had doubts about the claim.  See Ex. D to Resp. 34-35.

The plaintiffs next offer the affidavit of Dr. Matthew Levitt, an expert on terrorism in the Middle East.[3] See Resp. Ex. J. The report details extensive ties between the PRC and designated FTOs, and it provides a list of attacks "claimed by or attributed to the PRC." Id. at 97-101. What the report does not do is offer any additional information that would support a finding that the PRC was responsible for the attack that killed Parsons. It lists the Parsons bombing as an attack "claimed by or attributed to the PRC," id. at 100, but to say the attack was "claimed by" the PRC is not to say that it was actually committed by the PRC; and to say that the attack has been "attributed to" the PRC, in the passive voice, does not even assert Dr. Levitt's own opinion. The citations supporting the bullet points discussing the Parsons attack -- such as that the PRC at one time claimed responsibility for the attack, and that the PRC had previously used the type of bomb employed in the attack -- are in the record elsewhere and consist for the most part of news articles and State Department reports. Id. at 100. Expert opinions may be based on hearsay, but they may not be a conduit

---

[3] The PA argues that I should not consider Dr. Levitt's affidavit because he was not properly designated as an expert pursuant to Rule 26(a)(2). The plaintiffs had only referred to him as a "[c]onsultant [or] [n]on-[t]estifying [e]xpert," see Reply Ex. 2 at 2-3, prior to filing their opposition. The objection is overruled: the PA had fair notice that the plaintiffs were employing Dr. Levitt's services. Because I do not find Levitt's affidavit to be significantly probative, however, the Rule 26(a)(2) dispute is of no consequence.

for the introduction of factual assertions that are not based on personal knowledge.  See Fed. R. Civ. P. 56(e)(1).  The conclusion section also falls short of attributing the Parsons attack to the PRC; it merely asserts that the PRC has carried out numerous terrorist attacks.  Id. at 105.

Plaintiffs' admissible proof boils down to a single admissible fact -- that the bomb that killed Parsons was similar in structure to those used by the PRC in the past.  The rest is speculation and conjecture.  No reasonable juror could conclude on the basis of this evidence alone that the bomb that killed Parsons was placed by the PRC.[4]  Accordingly, I need not reach the second part of the § 2339A analysis –- the question of whether the PA supplied material support to the attacker.

**B. Conspiracy (§ 2332(b))**

Under 18 U.S.C. § 2332(b), it is a crime for someone outside the U.S. to "attempt[] to kill, or engage[] in a conspiracy to kill, a national of the United States."  To establish a conspiracy under § 2232(b), the plaintiffs must prove that the defendant "(1) knew about the aims and objectives of the [alleged] criminal conspirac[y], (2) agreed to the essence of

---

[4] There is evidence that Qarmout is a PRC member, so it may be sensible to consider the evidence related to Qarmout and the PRC together.  Nevertheless, as I discussed above, the bare fact that the bomb used resembles PRC bombs of the past adds so little weight to the Qarmout evidence that the evidence remains insufficient to establish the identity of the bomber.

these objectives, and (3) performed acts . . . intended to further these objectives." In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 114 (2d Cir. 2008). While the party seeking to prove the conspiracy "need not present evidence of an explicit agreement," id. at 113 (quoting United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993)), he or she must at least show that an agreement existed. And while these plaintiffs need not prove the identity of the actual bomber, they must show that the PA knowingly entered into an agreement to kill a U.S. national and performed acts to further that goal.

Here again plaintiffs rely primarily on the anonymous Report. The Report states that the bomb that killed Parsons was planted 20 meters in front of a PA security checkpoint, see Resp. Ex. A at 3, and it is undisputed that the lead car in the convoy was a PA police car. The Report writer states his belief that PA security officials at the checkpoint must have been aware of the bomb's presence and that information on the arrival of the U.S. convoy must have been leaked, either by the PA security officers or by someone in the convoy. That is speculation, not evidence –- and anonymous speculation, at that. The plaintiffs also point to a PA document, obtained by the Israeli government, that relates to bomb-making, including bombs that contain nitric acid. See Resp. Ex. H. The FBI found that the bomb in this case contained urea nitrate, which can be produced using nitric acid.

See Resp. Ex. E at 39. Intelligence reports that contain multiple levels of hearsay are not admissible evidence, and a report that the PA makes bombs does not prove that they made this bomb. Qarmout's statement that he asked PA security officers to look the other way while he dug a hole for a bomb offers no support for a conspiracy claim against the entire PA: Qarmout denies actually placing the bomb; Qarmout does not say whether the security officers complied with his request; and we have no basis on which to assign vicarious liability to the PA for the alleged criminal acts of a few employees. See Resp. Ex. C. at 19.

### C. Support for Foreign Terrorist Organization

The allegation that the PA supported a "foreign terrorist organization," or "FTO," in violation of 18 U.S.C. § 2339B, is not viable. The statute defines "terrorist organization" as "an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act." 18 U.S.C. § 2339B(g)(6). Section 219 in turn establishes a detailed procedure by which the Secretary of State may designate entities as FTOs. See 8 U.S.C. § 1189. The Secretary of State has not designated the PRC a terrorist organization.

The plaintiffs argue that FTO status may be "transferred" according to "ordinary principles of agency law," citing National Council of Resistance of Iran v. Dep't of State, 373 F.3d 152, 157 (D.C. Cir. 2004). See also National Council of

Resistance to Iran v. Dep't of State, 251 F.3d 192, 200 (D.C. Cir. 2001) (Secretary of State can "transfer" a designation when an FTO changes its name). Plaintiffs argue that Hamas, which is a designated FTO, so dominates and controls the PRC that Hamas's FTO designation transfers to the PRC. The National Council case turned, however, on express statutory authority, granted only to the Secretary of State by 8 U.S.C. § 1189. See id.

It is true that a number of district courts have relied on the National Council decisions to justify analyzing whether an entity is an alias or agent of an FTO. See Goldberg v. UBS AG, 660 F. Supp. 2d 410, 432-33 (S.D.N.Y. 2009); Weiss v. Nat'l Westminster Bank PLC, 453 F. Supp. 2d 609, 623 (E.D.N.Y. 2006); Strauss v. Credit Lyonnais, S.A., 2006 U.S. Dist. LEXIS 72649 (E.D.N.Y. Oct. 5, 2006). Even if I were to follow the lead of those courts, however, it would not avail plaintiffs. Findings that the PRC is an agent of a designated FTO, and that the PA gave material support to the PRC in violation of § 2339B, would establish the necessary predicate criminal act, but would not solve plaintiffs' problem of proving that Parsons' death occurred "by reason of" the predicate criminal act.[5]

---

[5] As I stated in my earlier opinion, courts have not settled on a causation standard for the ATA. See Parsons v. PLO, Dkt. #14, slip. op. at 11 (D.D.C. Sept. 30, 2008). The Seventh Circuit recently adopted a "relaxed" causation standard under the ATA. See Boim v. Holy Land Found. for Relief & Development, 549 F.3d 689, 695-98 (7th Cir. 2008) (en banc). However, at least one court has read "by reason of" in the ATA to require proximate

## III. Discovery

Plaintiffs have opposed the summary judgment motion on the merits, but they have also moved in the alternative for additional discovery under Rule 56(f).

Plaintiffs request discovery in two categories. First, they request the opportunity to take depositions of certain individuals. The details of this request must be gleaned from plaintiffs' briefing, because all the Rule 56(f) affidavit states on the subject is that "[i]n Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs have advised the Court that there are essential facts to justify their opposition which have not been presented because of the Defendants' opposition to discovery that Plaintiffs' [sic] sought." 56(f) Decl. ¶ 3, attached to Resp. The details of the defendants' alleged "opposition" are also left to the plaintiffs' brief and to a number of exhibits of emails and letters between counsel (which by themselves do not present a clear picture of noncooperation).

---

cause, see Rothstein v. UBS AG, 647 F. Supp. 2d 292, 295 (S.D.N.Y. 2009), and the statutory term "by reason of" generally is read to import a proximate cause standard. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-68 (1992) (RICO civil suits); Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 531-36 (1983) (Clayton Act § 4); Loeb v. Eastman Kodak Co., 183 F. 704, 709-10 (3rd Cir. 1910) (Sherman Act § 7). Here, the plaintiffs concede that a proximate cause standard is appropriate. See Resp. 14.

Defendants vigorously oppose plaintiffs' contentions that they have obstructed discovery and that the depositions would be likely to support plaintiffs' case. In the face of that opposition, plaintiffs' barebones Rule 56(f) affidavit is insufficient. Rule 56(f) permits the court to allow more discovery if the party opposing summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its position." The affidavit "cannot be a generalized, speculative request to conduct discovery but must demonstrate that further specified discovery will defeat a summary judgment motion." Maduforo v. Urban Serv. Sys. Corp., 2009 U.S. Dist. LEXIS 66591, at *2-3 (D.D.C. July 31, 2009) (emphasis omitted). Plaintiffs' affidavit, which seeks to incorporate by reference what amounts to unsupported argument, falls short of what the rule requires.

Second, plaintiffs request an opportunity to acquire additional information about their investigations from the United States and Israeli governments. 56(f) Decl. ¶¶ 4-6. But until now plaintiffs have made only casual efforts to obtain such information -- calling and writing letters to Israeli officials, and placing a single telephone call to the Acting Head of the National Security Division at DOJ, see id. ¶¶ 4-5. They have made no showing, by affidavit or otherwise, that more thorough and formal efforts would be successful.

## Conclusion

The plaintiffs motion for additional discovery will be denied, and the defendants' motion for summary judgment will be granted.  An appropriate order accompanies this memorandum.


                                    JAMES ROBERTSON
                              United States District Judge