## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ESTATE OF MARK PARSONS, *et al.*,

Plaintiffs,

v.

PALESTINIAN AUTHORITY, *et al.*,

Defendants.

Civil Action No. 07-1847 (BJR)

**MEMORANDUM OPINION ON DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

This case is before the Court on remand from the United States Court of Appeals for the District of Columbia. Plaintiffs—the Estate of Mark Parsons, Mary Lazin, John J. Parsons, Catherine Tyokody, the Estate of Agnes Parsons, and the Estate of John W. Parsons ("Parsons family")—are suing the remaining Defendant, the Palestinian Authority ("PA"),[1] under the Anti-Terrorism Act of 1991 ("ATA"), 18 U.S.C. § 2331 *et seq.*, in connection with the death of Mark Parsons. Parsons was killed by a roadside bomb while providing security for a U.S. State Department convoy in the Gaza Strip in October 2003. Following remand by the Court of Appeals, the PA filed a renewed motion for summary judgment. *See* Mot. at Dkt. #48. This Court, having reviewed the briefs, supporting documents, and relevant case law, denies the PA's motion.

---

[1] Judge James Robertson, who presided over this case prior to appeal, granted summary judgment dismissing all claims against the Palestinian Liberation Organization ("PLO"), who was also a Defendant to this action. *See* Memorandum (Dkt. #39) ("Robertson Opinion") at 2. The Parsons family did not appeal the dismissal of the PLO from this action. *See Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 121 (D.C. Cir. 2011) (noting that the claims at issue in the appeal were only against the PA, and not the PLO).

## I.    LEGAL BACKGROUND

### A.    Summary Judgment Standard

The court will grant a motion for summary judgment if the pleadings and any affidavits

or declarations show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the

burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits or

declarations may be accepted as true unless the opposing party submits its own affidavits or

declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C.

Cir. 1992).  As the PA's arguments turn entirely on issues of law, there is no issue of material

fact for purposes of this motion.

### B.    The Anti-Terrorism Act of 1991

The Anti-Terrorism Act of 1991, 18 U.S.C. § 2331 *et seq.*, gives any United States

national "injured in his or her person, property, or business by reason of an act of international

terrorism, or his or her estate, survivors, or heirs" the right to bring a civil lawsuit in federal

court.  18 U.S.C. § 2333(a).  The Act defines "international terrorism" as activities that, among

other things, "involve violent acts or acts dangerous to human life that are a violation of the

criminal laws of the United States or of any State, or that would be a criminal violation if

committed within the jurisdiction of the United States or of any State."  18 U.S.C. § 2331(1)(A).

The criminal violation alleged in the instant case arises under 18 U.S.C. § 2339A, which

concerns the provision of material support to terrorists.  Section 2339A makes it a crime to

"provide[] material support or resources . . . knowing or intending that they are to be used in

preparation for, or in carrying out" specific violent crimes, including 18 U.S.C. § 2332(a), which

prohibits the killing of a national of the United States while that national is outside the United

States.  18 U.S.C. §§ 2339A(a), 2332(a).

When Mark Parsons was killed in October 2003, the version of Section 2339A(b) in

effect defined "material support" as follows:

> (b)      Definition. – In this section, the term 'material support or resources' means currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

18 U.S.C. § 2339A(b) (2000 ed. Supp. III).

In 2004, Congress amended the definition of "material support."  Intelligence Reform and

Terrorism Prevention Act of 2004 ("IRTPA"), Dec. 17, 20014, P.L. 108-458, § 6603(b), 118

Stat. 3762.  This version, which is currently in effect, defines "material support" as follows:

> (b) Definitions.— As used in this section—
>
> (1) the term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339A(b)(1) (2004).[2]

---

[2]      Defendant PA's renewed motion for summary judgment is premised largely on the difference between the current version of the Act and that in effect at the time of Parsons' death.  *See* Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 6603, 118 Stat. 3638, 3762 (2004); Mot. at 2.  This issue shall be considered at length *infra*.

## II.     BACKGROUND

This case has a lengthy factual and procedural history, which has been recounted elsewhere.  See *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 120 (D.C. Cir. 2011) (relating the facts of the bombing that killed Mark Parsons); May 29, 2010 Memorandum (Dkt. #39) (opinion on summary judgment by Judge Robertson).  In light of the importance of that background, however, the Court will again recount it at length.

### A.     The Death of Mark Parsons

Mark Parsons was an employee of DynCorp International, a company who, in 2003, was under contract with the United States Department of State to provide security in the Gaza Strip. *Estate of Parsons*, 651 F.3d at 120.  On October 15, 2003, a Department of State convoy traveled through the Gaza Strip in order to interview Palestinian Fulbright Scholarship applicants, accompanied by DynCorp employees, with a Palestinian Authority Civil Police car in the lead position.  *Id.* at 119-20.  As the convoy traveled along Salahadeen Road, approximately 20 meters from a manned PA security checkpoint, a roadside bomb exploded.  *Id.* at 120.  Three DynCorp employees were killed, including Mark Parsons.

The PA security and police forces took control of the site after the bombing, and proceeded to gather forensic evidence and launch an investigation managed by the PA's Preventative Security Services.  *Id.*  Authorities from the United States and Israel launched separate investigations.  *Id.*

The PA detained and interrogated six suspects during its investigation.  *Id.*  One of those suspects was Amer Qarmout, leader of the Popular Resistance Committees ("PRC").  During his interrogation, Qarmout claimed that he supervised the digging of a hole on Salahadeen Road a few days prior to the bombing, in which he planned to place a bomb.  *Id.*  He also claimed that he

introduced himself to the PA National Security soldiers at the checkpoint and "asked them to turn their attention from the young men who were planting the device." *Id.* He denied that he ever planted a bomb. *Id.* Neither the Palestinian Authority, nor Israel, nor the United States has publicly identified a bomber. *Id.*

## B.     The First District Court Proceeding

The Plaintiffs to this action are Mark Parsons' estate, his siblings, and the estates of his late parents.  Compl. (Dkt. #1) ¶¶ 3-5.  On October 12, 2007, they filed suit against the PA and the PLO asserting claims of international terrorism pursuant to 18 U.S.C. § 2333; conspiracy to commit murder and attempted murder of United States citizens in violation of 18 U.S.C. §§ 2332(b) and 2333; provision of material support to terrorists in violation of 18 U.S.C. § 2339A; provision of material support or resources to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1); and intentional infliction of emotional distress. [3]

On May 29, 2010, Judge Robertson granted summary judgment to Defendants on all counts.  Order of May 29, 2010 (Dkt. #40).  As to the claim arising under Section 2339A, Judge Robertson ruled that, to determine whether a defendant provided material support for a terrorist act, a plaintiff must first prove who committed the attacks.  Robertson Opinion at 4.  Judge Robertson held that no reasonable juror could conclude on the basis of the limited evidence set forth by Plaintiffs that the bomb was placed by either Qarmout or the PRC, as Plaintiffs claimed. *Id.* at 8.  He further held that, in light of Plaintiffs' failure to raise a triable issue of fact as to who committed the attacks, it was unnecessary for him to consider whether the Defendants provided

---

[3]     The claim for intentional infliction of emotional distress was dismissed by Judge Robertson on September 30, 2008, and was not raised on appeal. *See* Order of Sept. 30, 2008 (Dkt. #14). Therefore, it is no longer in the case.

material support to the attacker.  *Id.*  Judge Robertson also denied Plaintiffs' request for additional discovery.  *Id.* at 13.

      C.      **The Court of Appeals Decision**

Plaintiffs appealed Judge Robertson's decision to the Circuit Court for the District of Columbia.  The issues on appeal were the material support claim arising under 18 U.S.C. § 2339A and the conspiracy claim arising under 18 U.S.C. § 2332(b).  *Estate of Parsons*, 651 F.3d at 122.  The Court of Appeals identified three theories advanced by Plaintiffs in support of their claims that were relevant to the appeal:  "[T]hat Palestinian National Security forces at the nearby checkpoint agreed to look the other way while the bomb was planted; that Authority personnel tipped off the bomber about the convoy; and that the Authority provided weapons to the bomber."  *Id.* at 121.

The Court of Appeals affirmed Judge Robertson's decision as to the conspiracy claim, but reversed his decision on the claim of material support in violation of Section 2339A.  *Id.* at 126.  The Court of Appeals held that it was not necessary for Plaintiffs to identify the actual bomber, and agreed with Plaintiffs that they could prevail "so long as they show that the Palestinian Authority provided material support to *whoever* directly carried out the attack."  *Id.* at 122 (emphasis in original).  Rather, the focus in 18 U.S.C. § 2339A is on the "material support provider," not the recipient.  *Id.*  Furthermore, the Court of Appeals held that the family's theory that Qarmout planted and detonated the bomb, and that PA checkpoint employees gave him material support in that action, "would, if proven, at least be sufficient to sustain their material support claim."  *Id.*  In light of the Plaintiffs' evidence, the Court of Appeals held that Plaintiffs met their burden under summary judgment with respect to whether Qarmout planted and detonated the bomb.  *Id.* at 123.  The Court of Appeals further held that, assuming that the

checkpoint security personnel turned their attention away from Qarmout as Plaintiffs claimed they did, such conduct fell within the definition of a "service" providing material support to terrorists within the meaning of Section 2339A.  *Id.* at 125.  The Court of Appeals declined to address Plaintiffs' alternate argument—that the checkpoint security personnel's alleged conduct constituted providing "personnel" under Section 2339, calling the question "trickier" in light of differing views on the proper definition of "personnel" within the context of that section.  *Id.* at 126.

The Court of Appeals did not reach a consensus as to whether the Plaintiffs showed a genuine issue of material fact as to the scienter element of the material support claim, *i.e.*, whether material support or resources were provided by the PA employees "*knowing or intending* that they are to be used in preparation for, or in carrying out, a violation of" 18 U.S.C. § 2332.  *Id.* (emphasis in original).  Furthermore, the Court of Appeals did not decide whether Plaintiffs should be permitted additional discovery as to the material support claim, noting that "the district court may well view the need for additional discovery on the material support claim differently in light of this opinion," and, therefore, leaving that issue for the district court on remand.  *Id.* at 126-27.

Following the Court of Appeals' decision, the PA filed a petition for a panel rehearing and rehearing *en banc*, pursuant to Federal Rules of Appellate Procedure 35 and 40.  *See* Combined Pet. for Panel Rehearing and Rehearing En Banc, *Estate of Parsons v. Palestinian Auth.*, No. 10-7085 (D.C. Cir. Sept. 6, 2011).  The PA's petition claimed that the panel erred when it considered the "service" argument, which was raised for the first time in Plaintiffs' reply brief on appeal, and when it "retroactively applied" the December 2004 amendment to Section 2339A(b).  *Id.* at 6, 10.  Specifically, prior to December 2004, the definition of "material

support" at Section 2339A(b) did not include the term "service." *Id.* at 11.  By applying a version of the statute that was not in effect at the time of Parsons' death, the PA claimed, the Court of Appeals decision violated the Ex Post Facto Clause.  *Id.* at 12 (citing U.S. Const. art. I, § 9, cl. 3).[4]  The Court of Appeals denied the petition both as to the request for panel rehearing and the request for rehearing *en banc* in one-sentence orders.  *See* Per Curiam Order, *Estate of Parsons v. Palestinian Auth.*, No. 10-7085 (D.C. Cir. Sept. 16, 2011); Per Curiam Order, *Estate of Parsons v. Palestinian Auth.*, No. 10-7085 (D.C. Cir. Sept. 16, 2011) (*en banc*).

**D.     Post-Appeal**

This case was assigned to Judge Roberts on remand.  *See* Dkt. #47.  On December 22, 2011, Defendant PA filed a renewed motion for summary judgment.  *See* Dkt. #48.  On January 4, 2012, Judge Roberts stayed briefing on that motion *sine die*, and set a schedule for supplemental briefing on Plaintiffs' motion for additional discovery in light of the D.C. Circuit's opinion on appeal.  On November 5, 2012, this case was reassigned to the undersigned judge.

On November 30, 2012, this Court issued a sealed Order granting Plaintiffs' request for additional discovery.  *See* Sealed Order (Dkt. #60).  Following the submission of a discovery plan by the parties, the Court lifted the stay on briefing for the PA's renewed motion.  *See* Jan. 3, 2013 Minute Order.  The motion is now ripe and ready for resolution.

**III.     DISCUSSION**

**A.     Plaintiffs' alleged facts are cognizable as the provision of "personnel"**

As noted above, on appeal, the Plaintiffs claimed that the conduct of the checkpoint security forces constituted the provision of "personnel" to the terrorist who planted the bomb.  *Estate of Parsons*, 651 F.3d at   The PA argues that Plaintiffs' claim fails as a matter of law,

---

[4]     The PA raises the same argument in the instant motion.

because the security forces did not have the requisite relationship with the bomber.  Mot. at 29.

The PA argues that, because "personnel" is not defined in Section 2339A, it must be given its

"ordinary meaning."  *Id.* at 30.  The PA claims that applying an "ordinary," dictionary definition

of "personnel" requires that the term entail "an ongoing relationship with the third party, an

agency relationship with the third party, and a commitment to further the third party's

objectives."  *Id.*  The PA contends that no such relationship existed between the checkpoint

security forces and whoever planted the bomb.  *Id.*  Furthermore, the PA claims that a broader

reading of "personnel" would be unconstitutionally vague.  *Id.*

As acknowledged by the D.C. Circuit, the question of how to define "personnel" in

Section 2339A is somewhat tricky.  *See Estate of Parsons*, 651 F.3d at 126.  In support of its

position, the PA points to the criminal case *United States v. Lindh*, in which the court interpreted

"personnel" for purposes of 18 U.S.C. § 2339B, the section of the statute prohibiting the

provision of material support or resources to designated foreign terrorist organizations.  *Id.*

(citing *United States v. Lindh*, 212 F. Supp. 2d 541 (E.D. Va. 2002)).  The defendant in that case,

John Philip Walker Lindh, was a United States national who fought for the Taliban in

Afghanistan.  *Lindh*, 212 F. Supp. 2d at 545-46.  Lindh claimed that "personnel" as it appeared in

Section 2339B was "unconstitutionally vague," because it penalized "mere association."  *Id.* at

572.  The *Lindh* court determined that the definition was not so broad, and that "personnel," as it

appeared in Section 2339B, referred "to individuals who function as employees or quasi-

employees—those who serve under the foreign entity's direction or control."  *Id.* at 573.

Section 2339B is by no means identical to Section 2339A, however.  Section 2339B

specifically criminalizes the knowing provision of material support or resources to an

organization that has been designated as a foreign terrorist organization by the Secretary of State

under 8 U.S.C. § 1189.  *See Lindh*, 212 F. Supp. 2d at 568 n.67.  Section 2339B penalizes the provision of material support without regard to what the support is for.  *See United States v. Stewart*, 2009 U.S. App. LEXIS 25184, at *48 (2d Cir. Nov. 17, 2009).  Therefore, a vague definition of "personnel" under Section 2339B could raise significant First Amendment concerns.  *See United States v. Sattar*, 314 F. Supp. 2d 279, 300 (S.D.N.Y. 2004).

Section 2339A, on the other hand, specifically criminalizes the provision of material support "knowing or intending" that it is "to be used in preparation for, or in carrying out," a violation of specific statutes—in this case, the killing of a national of the United States while that national is outside the United States.  18 U.S.C. §§ 2339A(a), 2332(a).  Therefore, the scienter requirement for Section 2339A is a higher, more demanding one than that for 2339B, and the First Amendment concerns are not present.  *See Sattar*, 314 F. Supp. 2d at 301.

The court in *United States v. Abu-Jihaad*, which concerned allegations under Section 2339A, declined to provide the narrow definition of "personnel" under Section 2339B that was put forward in *Lindh*.  *See United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 399-400 (D. Conn. 2009).  Turning to its "ordinary meaning," the court determined that "personnel" referred to "a body of persons employed by or active in an organization, service or place of work."  *Id.* at 400 (citing Random house Webster's Unabridged Dictionary (2001)).  Therefore, the court held, an individual did not need to be an "employee" or "quasi-employee" for purposes of the statute; there only needed to be some form of coordination, joint action, or understanding.  *Id.*  The court further determined that there was no reason to limit the "provision" of personnel to a "physical transfer or delivery of personnel," as to do so would be a "strained and untenable reading of the statute."  *Id.* (quoting *Sattar*, 314 F. Supp. 2d at 297).

This Court finds the *Abu-Jihaad* definition of the "provision" of "personnel" compelling. As that court noted, the differing scienter requirements of Section 2339B and Section 2339A indicate that, under Section 2339A, Congress intended for the statute to affect those persons "carrying out" or "preparing for" the designated crimes, whether they were an employee or quasi-employee of the terrorists or not. *Id.* at 399 (citing *Sattar*, 314 F. Supp. 2d at 298). Furthermore, as the *Abu-Jihaad* court also noted, Congress provided a more detailed definition of "personnel" in Section 2339B following the 2004 Amendment, whereas the definition in Section 2339A was merely changed to specify that "personnel" could include "1 or more individuals who may be or include oneself." *Id.* (citing 18 U.S.C. § 2339A(b)(1) (2004)).

Applying the *Abu-Jihaad* definition, the circumstances described by Plaintiffs and addressed by the D.C. Circuit—*i.e.*, an "understanding" between the checkpoint security forces and whoever planted the bomb that they would not interfere in his actions—are sufficient to raise a genuine dispute of material fact as to whether checkpoint security personnel were provided to whoever planted the bomb. [5]   Therefore, the Court denies summary judgment.

**B.      The Court declines to consider the applicability of "service" as material support to Plaintiffs' claims**

On appeal, the D.C. Circuit determined that a genuine dispute of material fact existed on Plaintiffs' material support claim because Plaintiffs presented adequate facts, if taken as true, to demonstrate that the checkpoint security forces provided a "service" to whoever planted the bomb that killed Mark Parsons. *Estate of Parsons*, 651 F. 3d at 125.  In its current motion, as in its petition for rehearing before the D.C. Circuit, the PA argues that Plaintiffs cannot prevail on

---

[5]     The D.C. Circuit did not reach a binding decision as to whether the Parsons family showed a genuine dispute of material fact as to the scienter element of their material support claim. *See Estate of Parsons*, 651 F.3d at 126.  As the PA's brief was on a purely legal issue, and neither party has presented any briefing on the issue of scienter, the Court declines to consider the issue at this time.

their material support claim as a "service" under Section 2339A, because that term was not part

of the definition of "material support" until the 2004 Amendment of the statute—after the attack

took place.  Mot. at 19-20.  As in its petition for rehearing, the PA claims that application of the

2004 Amendment to Section 2339A—which includes "service" in the definition of "material

support"—would violate the Ex Post Facto Clause.  *Id.* at 19-21.  The PA argues that this Court

is not precluded from considering the question, because the D.C. Circuit did not specifically

decide the question of whether the current version of the statute should be applicable in this case.

*Id.* at 14.[6]  In contrast, Plaintiffs argue that Congress' reorganization of 18 U.S.C. § 2339A

through the IRTPA "merely clarified" Section 2339A(b), thus voiding any concerns regarding

retroactivity and the Ex Post Facto Clause.  *Id.*

   The Ex Post Facto Clause of the United States Constitution provides that "[n]o bill of

attainder or ex post facto Law shall be passed."  U.S. Const. art. I, § 9, cl. 3.  Thus, under the Ex

Post Facto Clause, a legislature "may not retroactively alter the definition of crimes."  *Collins v.*

*Youngblood*, 497 U.S. 37, 43 (1990).  The constitutional prohibition is addressed to any law that

would "make innocent acts criminal, alter the nature of the offense, or increase the punishment."

*Id.* at 46.  As it is by no means obvious to this Court that the 2004 Amendments merely

---

[6]   Although Plaintiffs do not raise the issue, the Court notes that it also considered whether the PA's
arguments as to "service" should be available in light of the D.C. Circuit's summary denial of its
petition for panel rehearing and rehearing *en banc*.  While there does not appear to be any precedent
for the issue in the D.C. Circuit, several other circuit courts have considered the issue, and determined
that summary denial of a petition for rehearing has no binding effect on the arguments raised therein.
*See, e.g., Alpha/Omega Ins. Servs. Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 281 (5th Cir.
2001) (holding that a denial of a motion for panel rehearing does not amount to a decision on the
merits, and has to precedential effect); *Moore v. Anderson*, 222 F.3d 280, 284 (7th Cir. 2000)
(holding that a summary denial of rehearing that did not explain the basis for denial did not expand
the compass of the original mandate); *United States v. Cote*, 51 F.3d 178, 180-81 (9th Cir. 1995)
(holding that a summary denial of hearing does not amount to a decision on the merits, and that the
law of the case doctrine does not foreclose consideration of issues raised in the petition for rehearing).
Therefore, this Court finds that the D.C. Circuit did not consider the merits of whether the 2004
Amendments to Section 2339A, including the addition of "service" to the definition of "material
support," could be applied retroactively to the events surrounding Mark Parsons' death in 2003.

"clarified" Section 2339A by adding the term "service," the parties' positions would require this Court to seriously consider the potential Ex Post Facto implications of retroactively applying the 2004 version of the statute.

Under the doctrine of constitutional avoidance, a court must construe ambiguous statutory language to avoid serious constitutional doubts, 'if it is readily susceptible to such a construction." *See United States v. Stevens*, 559 U.S. 460 (2008); *see also Dep't of Air Force v. Fed. Labor Relations Auth.*, 952 F.2d 446, 452 (D.C. Cir. 1991) (applying the statutory rule for constitutional avoidance to regulations).  As the Court has determined that, if proven, the conduct of the security checkpoint forces constitutes a provision of "personnel" under either the pre- or post-2004 versions of the statute, it is unnecessary for the Court to visit this particularly thorny issue.  Therefore, it declines to do so.

### C.      Plaintiffs' new theories will not be considered at this time

In addition to their arguments that the checkpoint security forces provided services and personnel to whoever planted the bomb, Plaintiffs raise a number of new arguments in their opposition to the PA's motion.  Plaintiffs argue that the PA "provided" "explosives" and "other physical assets," and "concealed" the planting of the bomb near the checkpoint, all of which were included in the definition of "material support" under the version of Section 2339A that was in effect in October 2003.  Opp. at 7.

Plaintiffs also argue that the PA "aided and abetted" a violation of 18 U.S.C. § 2332 (homicide or attempt or conspiracy with respect to homicide) or 18 U.S.C. § 2339A (provision of material support to terrorists knowing or intending that such support will be used in carrying out a violation of, *inter alia*, 18 U.S.C. § 2332), which is in itself a violation of 18 U.S.C. § 2(a). Under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18

U.S.C. § 2(a).  A violation of Section 2 creates civil liability under the Anti-Terrorism Act.  18

U.S.C. § 2333(a).  The PA objects to Plaintiffs' raising new theories of liability as prejudicial.

As to Plaintiffs' new arguments under Section 2339A, the Court determines that this

motion is not the proper place to consider them.  Such new arguments would require the Court to

consider facts and evidence not before it.  As the Court has already determined that Plaintiffs'

claim for material support survives the PA's motion on a legal basis—the only focus of the

instant motion—it is not necessary to consider additional theories at this time.

As to Plaintiffs' arguments under 18 U.S.C. § 2, there is no reference to Section 2 in

Plaintiffs' Complaint.  Thus, allowing Plaintiffs to raise this statute would be akin to allowing

them to amend their Complaint.  Under Federal Rule of Civil Procedure 15(a), a court should

freely give leave to amend when justice so requires.  Fed. R. Civ. P. 15(a)(2).  When evaluating

whether to grant leave to amend, a court must consider undue delay, prejudice to the opposing

party, futility of the amendment, bad faith, and whether the plaintiff has previously amended the

complaint.  *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012).

There is little question that this particular theory has been unduly delayed, and that its

amendment would be prejudicial to the PA.  Plaintiffs do not indicate that the amendment is

necessary due to any information uncovered as a result of discovery.  The prejudice to the PA,

however, is substantial.  This case has been through an initial round of discovery and summary

judgment, an appeal, a remand, and months of additional discovery.  Throughout that time, the

case has been focused in large part on Plaintiffs' claim that the PA violated Section 2339A

through the provision of material support to whoever planted the bomb near the PA security

checkpoint that killed Mark Parsons.  To require the PA to consider yet another layer of its

defense at this late date—specifically, to demonstrate that the checkpoint security personnel did

not "aid and abet" another party in violating Section 2339A—would be unduly prejudicial.  To the contrary, as the Court has determined that Plaintiffs may proceed at this point with their claim under Section 2339A as concerns the provision of "personnel," there will be no prejudice to Plaintiffs from denial of this this "back-door" amendment of their claims.  Thus, the Court rejects Plaintiffs argument under 18 U.S.C. § 2.

   **THEREFORE**, it is, hereby, **ORDERED** that Defendant's Renewed Motion for Summary Judgment is **DENIED.**

   A separate Order consistent with this Memorandum Opinion will be filed.

   July 3, 2013

_____

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE